The opinion of the Court was delivered by
Inglis, A. J..
The appeal in this case renews the question made on the circuit, as to the legal operation and effect of the deed of May 20th, 1854, from Jane J. McKnight to the present appellant. Is that deed “ a mortgage or instrument of writing, in the nature of a mortgage,” as tbe circuit decree affirms, or is it “an absolute transfer of title, with a condition subsequent which never arose,” as is contended in the first ground of appeal ? The bill alleges that “ it was understood and intended, at the time of its execution, to be an absolute sale,” and the chattels thereby conveyed were then delivered into the plaintiff's possession ; that “the clause of defeasance was added only for the purpose of enabling the grantor, at some future time, if able and desiring so to do, by re-payment of what the plaintiff should pay for her, to reclaim the property.”
The terms of this deed, and the circumstances which induced and followed its execution, taken alone, very clearly evince that the transaction, thereby consummated and evidenced, was intended by the parties to be, and is in fact, only a mortgage, and was not a sale, transferring finally and absolutely the property in the chattels, which are the subject thereof, to the present plaintiff, or even one qualified *229 by a limitation upon an event wbicb was to determine it, or by an agreement for leave to tbe vendor to repurchase.
The purpose is declared in terms to be, “ for the full and better securing "William Gr. McKnight” (i: e. tbe present plaintiff) “ from all liability for wbicb be may become indebted as my” (i. e. Jane J. McKnight’s) “ security on any notes,” &c., and tbe estate in tbe chattels wbicb is conveyed to him for this purpose is thus described: “to have and to hold, &c., as bis own right and title, until' be shall become relieved from all indebtedness or obligation incurred as security as aforesaid.” Thus tbe purpose avowed is, to indemnify and save harmless the plaintiff from and against liabilities incurred as tbe grantor’s surety, and be is accordingly to bold only while such liabilities and their consequences endure. It would be difficult to impress upon tbe face of an instrument, more clearly than is done in these words, “the character of a security,” or more plainly to evince, by language, that tbe transaction between tbe parties was a mere loan of tbe plaintiff’s credit, and security for repayment, or protection against consequent loss; and not a purchase and conveyance of tbe maker’s title and estate. To this view tbe circumstances of the transaction exactly conform. There is no payment of a price, or even transfer to and assumption by tbe plaintiff) of the grantor’s liability to third persons, so as to relieve and discharge tbe latter, as tbe consideration for tbe conveyance. There is an undertaking for tbe performance of the grantor’s engagements, entered into or contemplated, but for this performance the grantor continues, as before, equally with tbe plaintiff, and as between themselves, primarily liable. Tbe relation of debtor and creditor, or rather principal and surety, bad been constituted tbe day before, was then subsisting, and afterwards continued. It is tbe fair result of the evidence, that there was no cotemporaneous delivery in fact of tbe chattel, as tbe third ground' of appeal assumes. *230 The plaintiff, William Gr. McKnight, was then living separately from Ms mother, Jane J. McKnight. The negro Bill, one of those conveyed, was in the possession of A. Isaac McKnight, under a contract of hiring for the year, and so remained until the completion of the term of hiring. It does not appear that the security fox his hire, if any, or the right to receive it, was ever transferred to the plaintiff. The other negro, James, was then learning his trade, in the ■ blacksmith shop of his mistress, the grantor in the deed, and so continued. In the spring of 1855 Jane J. McKnight, the grantor, and not William Gr. McKnight, the grantee and present plaintiff, in the exercise of the right of ownership, let the negro Bill, on hire, to the witness, Bradley, to work as a cai’penter, and the other negro, James, accompanied Mm, and they continued in the possession of this bailee of the grantor until seized by the Sheriff She, not the plains tiff, undertook to supply these negroes with food during the engagement with Bradley, and she stipulated for the plaintiff’s oversight of them. There is not wanting some testimony looking the contrary way, but altogether the safest and most satisfactory conclusion from the whole is, that the possession was not and was not intended to be changed. Against this import of the terms of the deed, and the circumstances of its execution, there is no evidence aliunde to support the allegation of an intention other than these evince. If there were, it would avail little. “ If the character of a security is once impressed on the conveyance, it is a rule never departed from that no cotemporaneous stipulation can clog the right of redemption, or entitle the creditor to more than repayment of his principal, interest and costs. This rule is expressed in the maxim, ' Once a mortgage, always a mortgage,’ and stipulations repugnant to this maxim have often been set aside. Such, for example, are agreements for entitling the mortgagee, after default, to purchase, at a specific. sum.” Adam’s *231 Eq. 112. It is the judgment of this Court, that the deed, of May 20th, 1854, was intended to be, and is a mortgage, or, at least, it is “ an instrument of writing in the nature of a mortgage,” and that, in this particular, therefore, there is no such error in the circuit decree as the appellant in his first and third grounds assigns.
This mortgage has never been recorded. Eighteen months after its execution, the defendant, Gordon, purchased the negro James, one of the two conveyed therein, for valuable consideration, as the property of the mortgagor, Jane J. McKnight, at a sale by the Sheriff, under execution against her, and under this purchase took possession. And the precise issue made by the residue of the present controversy is, Can he maintain this possession, and the title acquired by his purchase, against the plaintiff’s prior mortgage and discharged from its lien ? The Act of 1843 — “ To amend the law in relation to recording mortgages, ” &c., sec. 2— provides, that no “mortgage, or other instrument of writing in the nature of a mortgage, of personal property, shall be valid, so as to affect the rights of subsequent creditors or purchasers for valuable consideration, without notice, unless the same shall be recorded, &c., within sixty days from the execution thereof.” 11 Stat. 256. The defendant claims to be a “ purchaser ” within the protection of this statute.
Eecording is not an element in the due execution of a mortgage, and therefore is not essential to its validity. Under the general law regulating the operation and effect of mortgages, an instrument of this kind, though unrecorded, must necessarily take precedence of the lien of a subsequent execution or of ^subsequent sale, whether made by the Sheriff under such execution, or immediately by the mortgagor himself. Eor having divested himself, for the time, at least, of the estate in the chattel, &c., put in pledge by the mortgage, he of course has no power in law *232 to dispose a second time of the same estate, until the purpose of the first disposition is satisfied, nor can a subsequent execution confer any authority upon the Sheriff to sell such estate for its satisfaction. But the positive rule of law established by this statute (1843) precludes the mortgagee, who has omitted to put his mortgage on record within the time limited, from interposing the estate which he acquired by it, in bar or derogation of the estate or claim for which one, who is within the term of its protection, has paid. As against such an one, he is, by his omission to record, estopped from asserting his title. The present defendant is, as has been stated, a purchaser “for valuable consideration.” The bill avers that he “ purchased with full and explicit notice of the plaintiff’s claim and right.” And the appellant, in his second ground of exception, complains that the circuit decree does not so affirm. The answer of the defendant directly and positively denies that, “ at the time of purchase, the defendant was aware of the existence of any such claim as is set up by the plaintiff, or had any notice whatever of his title, if he has anydenies “ that he ever had notice of the existence of the mortgage, or of any claim whatever by the plaintiff to the-property therein mentionedand affirms that “ he paid the purchase-money in good faith, without notice of the plaintiff’s claim.” No witness clearly contradicts this denial of notice. The testimony which at all touches the point of notice is conflicting, vague and unsatisfactory, nowhere discloses any production of, or reference to the mortgage, or any statement or intimation of the nature of the plaintiff’s claim, and is wholly insufficient to impair the effect of the defendant’s distinct and positive denial, on oath, in response to the allegation of the bill. It is considered, that upon the case made by the pleadings and evidence, that defendant is a subsequent “purchaser of the mortgaged chattel, for valuable consideration, without notice,” of the prior unrecorded *233 mortgage. He fulfils, therefore, in all particulars, the terms of the statute. Why then may he not maintain his purchase against the mortgagee ?
It is contended that, though within the terms, the defendant is not within the intention, and therefore not within the protection of the rule of priority established by this statute. The two conflicting titles, between which the law here proposes to decide, are such, it is said, as are both derived immediately from the same grantor. Such is understood to be the affirmation of the sixth ground of appeal, as interpreted by the argument at the bar. Certainly, it can only be a title derived from the mortgagor that can be affected by, and need protection against, the mortgage. Whether a purchaser, for valuable consideration without notice, who holds by title derived from the mortgagor, through mesne purchasers, can merely, upon his own merit as such purchaser, claim the protection of this statute against the mortgage, need not now be discussed. The purchaser at Sheriff’s sale under execution against the mortgagor is not considered to be in this position. He takes by his purchase and holds the estate, interest and title, of the mortgagor immediately, without the intervention of any intermediate holder. The judgment and execution are said to constitute a link in his chain of title, to connect him with the mortgagor, defendant in execution. And they do so, just as the power of a vendor’s attorney-in-fact constitutes a part of the title of the vendee to whom- he has conveyed his principal’s title, as creating and evidencing his authority so to do. The Sheriff does not, in any proper sense, become the owner or proprietor of the property which he takes in execution, though his possession, taken by virtue of a power coupled with an interest, (being the creditor’s interest represented by him,) is protected by the law even against the owner, defendant in execution, until that interest is satisfied.
*234 When controversies affecting the civil rights of individuals arise, they may adjust and settle them for themselves. If they distrust their own judgment upon the merits of their dispute, or cannot concur in judgment as to its proper composition, they may refer it for adjustment and settlement to disinterested third parties, and agree to abide their judgments. If they will not do either, they must resort to those tribunals which the law, because it is the interest of the commonwealth that controversies shall cease, has provided for their final and complete determination. In any of these cases the parties are concluded by the result of the particular mode of adjustment they have selected, if there has been no legal defect in the proceeding. The great distinction in effectiveness is, that the tribunals provided by the law execute their own awards; but when the parties select these tribunals, they adopt the whole machinery of adjustment and actual settlements which belong to them. The Courts decide only those controversies which parties bring to them for adjudication. The officer of the law then becomes, in a sense, the agent of the parties — the extent of his powers as such and the mode of their execution being prescribed by the law; and, while acting within the scope of his authority, binds each of them, and represents their respective rights and obligations in the matter. His deed, under such circumstances, conveying the property of the defendant in execution sold under process for the satisfaction or settlement of the plaintiff’s recovery by the judgment of the Court adjusting their controversy, is as the deed of the defendant himself, but without warranty,, and concludes the defendant to the same extent that his own deed, similarly qualified, would. The “ valuable consideration” paid by a purchaser at Sheriff’s sale for a mortgaged chattel sold under execution against the mortgagor, enures not to the benefit of the Sheriff^ but of the mortgagor, to whom, or to whose relief, it passes. Having pre *235 viously procured an advance of money or other value upon it from the mortgagee, he now takes, a second time, its value from the innocent purchaser, who, deluded by the show of ownership which, by the contrivance or connivance of mortgagor and mortgagee, the former maintains, falls, if this statute does not rescue him, into the pit they have joined to dig for him, or,, at least, have left exposed to his footsteps without warning.
The mischief, for the suppression of which recording laws have been contrived, consists in the fraud which “knavish and necessitous persons” practice, in selling or mortgaging their lands or chattels for money or other valuable consideration, and, after they have thus divested themselves of all lawful power of disposition, availing themselves of the possession, or other apparent ownership, continued or acquired by them, to obtain, by a second sale, or mortgage, or other equally unwarrantable use of the same property, money, or other value, from those who deal with them in ignorance of the former transaction, and of their consequent wrant or defect of title, and take either nothing whatever, or, at least, not what they bargained or were iifduced to look for by their dealing, but, on the contrary, in the language of the old statutes, “ do often lose their money and are put to great charges in suits of law and otherwise.”' The language of the statutes everywhere, and especially in their preambles, sufficiently evince this. The early laws sought to deter men from these practices by punishing, as for a misdemeanor, him who, having once sold any kind of property, or had the benefit of its sale, sold or offered to sell the same property a second time, (A. A. 1791, sec. 1, 5 Stat. 177;) and by depriving of all equity of redemption the mortgagor, who fails to give written notice to his. mortgagee of the existence and terms of any prior subsisting mortgage, or other encumbrance, or charge upon the property mortgaged. (4 & 5 W. & M. C. 16; 2 Stat. 535.) *236 But the recording laws supply a more effectual correction, by either rendering the consummation of the knavish purpose impracticable, or turning its mischief upon the head of him who, if he does not actually participate in it, by his negligence contributes to its accomplishment. The second purchaser’s ignorance of the former sale, &c., is that which alone exposes him to the designs of the “ knave,” and the advantage taken of that ignorance constitutes the gist of the fraud. The remedy provided, therefore, consists in giving notice, so far as the law can effect this, to all persons of every such mortgage, sale, &c., by requiring of the first purchaser, &c., under pain of the defeat or postponement of his estate, that the deed or other instrument by which his purchase has been consummated, or an abstract of it, shall be recorded within a reasonable time in public books, kept in a public office provided for the purpose, to which office and books all persons may have free access, and to which ordinary prudence will always resort before incurring a risk. Such public registry may not bring actual knowledge of the fact registered to every one, but it is the utmost, so far as the ■ first purchaser &c. is to be affected, that the law can reasonably do, in order to accomplish this result. It is, no doubt, notice in fact to the vigilant, and is, therefore, notice in law to all. When the ignorance, which the recording laws propose to enlighten, does not in fact exist, the fraud, which they would prevent, cannot be perpetrated, and therefore it is that, however peremptory in its terms may be their requisition of registration and their denunciation of the penalties of its neglect, and however absolute the silence of some of them, as to the effect of actual knowledge, the Courts have uniformly, in their construction of these laws, come to hold, that registration, being but a substitute for actual notice and intended to secure this, is not- essential when the party intended to be protected has such actual notice. Using the law for its *237 only legitimate end, to suppress the mischief and advance the remedy, they have given it no place where the mischief could not exist and the remedy was not needed. Acting upon a. like reason, if those only have been allowed the remedy who are in the mischief to be suppressed, all such as are within this mischief, and not excluded from the terms of the rule, must be admitted to the remedy. Is not he who, without notice of the mortgage, purchases the mortgaged chattel for valuable consideration as the property of, and at a sale under execution against, the mortgagor, equally within the mischief with him who so purchases,by immediate negotiation with the mortgagor himself? The. damage and the guiltless inability to guard against it are the same; the same outward show of ownership, or lack of notice of its change, beguiles the victim of craft in each case, the same parties contribute by design or neglect to the production of the damage, and the sanie party enjoys the fruit of the wrong. He who, after his property has once been sold by the Sheriff for his benefit or to his relief, • again, by private bargain, sells it to a purchaser for value, or gets other benefits on the faith of it, without giving notice of the previous sale, or he who, having himself, by private contract, already sold it for value, permits it to be sold under execution as his property to such a purchaser,' without making known his previous sale, is certainly likely to' be quite as “necessitous” and, ordinarily, quite as “ knavish,” as he who himself makes two successive sales, &c., for value, without notice of the first, to the second purchaser. And there seems quite as much reason to impute his conduct, in the former case as in the latter, to these properties of his condition and character. To the consummation of the knavery in fact or in law, as the cáse may be, the silent mortgagee, who fails to put his mortgage upon the public records, contributes equally in the two cases. No doubt the actual harm will be, and often is, the *238 result of mere neglect, without “ knavish ” purpose on the part of any one concerned, as may be well believed, to be the case in the present instance. But the law can only frame general rules having respect to external acts, badges, and results. It would be vain, in administering these, to undertake exploring the secret motives of parties for a test of their application.
Except Massey vs. Thompson, 2 N. & McC. 105, referred to below, no reported case has been found in which counsel seem to have pressed in argument, or the Court to have discussed in its judgment, with any such special earnestness as would import thorough examination, the inquiry whether, under the several recording laws, or any of them, of the two successive instruments of conveyance, or the deed, mortgage, &c., and subsequent credit, between which the order of priority and preference is, by the laws, regulated, one may be a Sheriff’s deed made in pursuance of a sale under execution against the grantor in the other deed, the debtor, &c. But uniformly, and almost without question, this seems to have been assumed.
The Act of 1698, 2 Stat. 137 — “To prevent deceits by double mortgages,” &c. — provides, that the sale or mortgage of land or chattels, which shall be first recorded as is therein directed, shall be taken to be the first. Nothing is expressed indicating from whom the deeds, &c., are to proceed, any more than the property to be conveyed by them or its identity. These are left to be inferred by necessary implication from the subject-matter and purpose of the Act. In Barnwell vs. Porteous, 2 Hill Ch. 219, mortgaged land was sold by the Sheriff, under an execution against the mortgagor junior to the mortgage, and the Sheriff’s deed, having been recorded, was held entitled, under the Act of 1698, to priority over the mortgage which had not been recorded. In Youngblood vs. Keadle, 1 Strob. 121, Judge O’Neall, on the circuit and in the Appeal Court, insists that the Act *239 of 1698 was intended to guard against double sales, mortgages, &c., by the same person, of the same goods, &o.; and. that, therefore, one who held under the mortgagor, indeed, but through several mesne purchases, the first of which, however, was subsequent to the mortgage, could not, by recording his bill of sale from his immediate vendor, acquire a priority over the mortgage which had not been recorded. Whether the majority of the Court are to be understood as concurring in that opinion does not seem entirely clear, as it was not perhaps necessary to the j udgment in the case to maintain it. But, referring to Barnwell vs. Porteous, the Judge says: “The distinction to which I have adverted was not considered in that case. Still it may be, and I think is, rightly decided, on the ground that the Sheriff’s deed was the same as a second conveyance from the mortgagor himself
The Act of 1785, sec. 45, 7 Stat. 282, enacts that no conveyance of land, &c., shall pass any estate, &c., unless recorded as there prescribed, but shall, in such case, be valid only between the parties and their heirs, and void in favor of creditors of subsequent purchasers. Here, as in the former case, there is an utter silence as to the person from whom the deeds are to proceed, and as to the property to be conveyed. In Massey vs. Thompson, (ut supra,) the two deeds between which the contest for priority was maintained under the provision of this Act, were deeds made by the Sheriff at two successive sales under execution against the same defendants. The .later deed having been only recorded, and the earlier not, the former was held entitled to the priority. The point was made directly in this case as a ground of appeal, that “Sheriffs’ deeds are not embraced in the recording Act.” But the Court held that the “ Act embraces Sheriffs’ deeds as well as others.” With regard to the relation of the defendant in execution to the Sheriff’s deed, Colcock, J., in another part of .the opinion *240 says: “ The defendant ought not to be permitted to oppose the title of a purchaser. The Sheriff’s deed is his. He has received the consideration. It has been applied to the payment of his debts. He should be estopped; no more should he be permitted to oppose the recovery of the plaintiff than if he had signed the conveyance with his own hand.” In McFall vs. Sherrard, Harp. 295, the contest was between a Sheriff’s deed to the purchaser at a sale under execution, duly recorded, and a prior deed from the defendant in the execution himself to another, not recorded within time. The grantee, under the later recorded deed, had notice of the other deed before he purchased, and this notice excluded him from the precedence he would otherwise have had. In Steele vs. Mansell, 6 Rich. 437, the later of the two deeds was a Sheriff’s deed to a purchaser under execution, recorded within time ; the earlier, a deed from the defendant in the execution himself, recorded not within the prescribed time, but before the later purchase. This earlier deed was preferred because first recorded, under the provisions of the Act of 1698, it being considered that our recording law applicable to such a case is the result of the combined operation of the two statutes of 1698 and 1785. In this case Wardlaw, (D. L.) J., says: “The Sheriff’s deed to Hagood is the same as if it had been made by Corbin— a second deed from the same grantor to a subsequent purchaser without notice.” Corbin was the defendant in the execution under which the land had been sold. In Leger vs. Doyle, 11 Rich. 109, both the deeds, between which the contests for priority was, were Sheriff’s deeds to different purchasers,, at two successive sales under execution against the same tenant. . The earlier deed, though not recorded for many years, was recorded between the second Sheriff’s sale and the execution of the Sheriff’s deed to the purchaser thereat, and was held entitled to priority over the later deed.
*241 The scheme of each of these two early statutes, and of the late Act, (1848,) under the terms of which the present question is made, is the same: simply to postpone an earlier deed, not recorded as required, to a later deed held by one who bought for value, without actual notice of the former deed. All three are alike silent as to the identity of the source from which the several deeds, among which they propose respectively to settle the precedence, must proceed. In the construction of the former, and the administration of the rule of priority, established by each, no distinction has been heretofore made between deeds made by the Sheriff to the purchaser at' his sale under execution, and deeds made directly by the defendant himself, in such execution. Both have been practically treated.as proceeding from the same source, the deeds of the same grantor, and the Sheriff regarded in his deed, pro hac vice, the agent or attorney-in-fact of the defendant in execution. And the Act of 1785, as construed by the Courts, has a provision in favor of subsequent creditors, similar in substance to that contained in the Act of 1843, which is now to be adverted to.
The statute (1843) proposes to protect the subsequent creditors of mortgagor without notice of the mortgage, as well as subsequent purchasers for value without such notice. If the general language of description used must be interpreted to embrace purchasers at Sheriffs’ sales, so that such purchaser, if without notice, shall be within its protection, then, it is supposed by the plaintiff here, in order to exclude from its benefits such a purchaser at Sheriffs’ sale, it is only necessary to affect him with such notice.' No one, who is not in one or other of the two classes described in the statute as within its exception to the general rule regulating the operation and effect of chattel mortgages, can claim the benefit thereof. And, therefore, against every, other person, the mortgage must prevail according, to its common law efficacy. Such being the case, it is argued, the mort *242 gagor and mortgagee, or either of them, may at will wholly defeat the protection intended for the subsequent creditor without notice. When such creditor, having pursued his privileged demand to judgment and execution, proceeds to avail himself of the promised protection by seizure and sale of the mortgaged chattel, for the satisfaction to which the law declares it liable, it needs only to make the fact of the mortgage notorious, in order to arrest all bidding and prevent a sale. It avails the creditor nothing, that, as against him, the whole legal estate in the mortgaged chattel continues, notwithstanding the mortgage, in the mortgagor, if it is left or put in the power of him who by his fraud or neglect seduced him into the credit, and against the consummation of whose design the statutory privilege was intended to secure him, thus to disappoint him of its fruition, by destroying the salable value of the chattel. To guarantee to one a right to sell, and deny to all others a -right to buy, would be a solecism in law. It would be imputing folly, as well as mischief, to the law under such circumstances, to say that it either permitted the creditor alone to buy, or precluded him also as a purchaser with, though a creditor without, notice. As a construction of the statute which would thus defeat one of its chief purposes is wholly inadmissible, it is urged that purchasers at Sheriffs’ sales under execution against the mortgagor are not in the character of purchasers within the meaning of the statute, but must stand in all cases, whether with, or without notice, upon the right of the creditors, under and for the satisfaction of whose executions they buy, and as they may not fall below, must not rise above, the level of their rights. If, when they purchase under the execution of a creditor who is protected by the statute, they may maintain their purchase against the mortgagee, notwithstanding they -bought with notice, it is insisted that it would be an inconsistency to hold that, when, on the other hand, they pur *243 chase, though without notice of the mortgage, under the execution of a creditor not within the protection of the statute, they can likewise maintain their purchase.
It would be safe to say, that, if this Act of 1843 had, like the old Act of 1698,-provided for the''protection of purchasers only, its application to purchasers at subsequent Sheriffs’ sales under execution against the mortgagor, would never have been doubted. The purchaser at Sheriffs’ sale in Barnwell vs. Porteous, who, by recording; obtained the precedence over the prior unrecorded mortgage, was himself the creditor, plaintiff- in the execution under which he bought, and his debt was entitled to no favor as against the mortgage, having been contracted prior to its execution. But if the general description, “ purchasers,” when used alone in the earlier Act, etc vi termini, included a purchase at Sheriffs’ sale, regarded as a purchaser from the defendant in execution, how can the addition of protection to a certain class of the mortgagor’s creditors, so restrict the import of “ purchaser ” as to exclude him ? Yet it is only this additional protection which creates the apparent inconsistency urged as an argument against this larger interpretation of the word. Let it be borne in mind, then, that there are two classes of persons protected against the damage to be apprehended from these undisclosed mortgages : 1. Subsequent creditors of the mortgagor without notice of the mortgage; and 2. Purchasers for valuable consideration without such notice. In order to make the rule.effectual for the defence of the former class, it is necessary to insure a good title to purchasers at sales under their executions, whether such purchasers have or have not notice. It cannot matter whether the purchaser know of the mortgage or not, if, notwithstanding the mortgage, the chattel is liable for the satisfaction of the creditor under whose execution it is sold. For all the purposes of such a sale, it is as if the mortgage did not exist, or as if the lien of the execution *244 preceded it in time. The creditor’s right to sell cures the infirmity there would else be in the purchaser’s title, and, as mortgagor and mortgagee are estopped from disputing the sale, they are, therefore, universally estopped from denying the purchase. In such case the purchase is supported, not for its own sake, or because of the merit of the purchaser, but in order to and as a necessary means of the protection of the creditor. The shield of the statute defends the Sheriffs’ vendee, but it is held in the hands of the creditor. But when the purchaser at Sheriffs’ sale is without notice, whether the creditor was entitled to subject the chattel to his satisfaction or not, the purchaser may, in his own right, and on- the ground of his own merit, interpose the statute between his purchase and the mortgage. Such an administration of this statutory rule as this admits to its protection, under certain circumstances, purchasers at Sheriffs’ sale with notice, as, under all circumstances, it does those without notice ; and though seeming to the superficial observer to' work an inconsistency, is exactly analogous to that in chancery of the defence, against a concealed equity, of “purchase for valuable consideration without notice,” from which system of jurisprudence the rule seems to have been borrowed and applied to the recording Acts, as a de-fence against legal titles. There a purchaser with notice from a purchaser without notice is protected equally with his vendor — the latter on his own merit and by immediate title, the former on the merit of his particular vendor and as the indispensable means of his security. It may perhaps be inferred from the language of Judge Johnson in Segurs vs. Powers, (see a brief report of it embraced in the opinion in Steele vs. Mansell, 6 Rich. 460,) that he would in like manner administer the statutory defence supplied by the recording Acts. Both parties claimed from Kelly, each through mesne holders. The defendant’s immediate vendor, Harrall, and the immediate predecessor, Jones, of *245 that vendor, being the purchaser directly from Kelly, both had notice of the deed from Kelly, under which the plaintiff claimed, but the defendant himself bought without notice. The Judge considered that notice to Jones and Harrall could not affect the defendant, Powers. If it did> “the Act requiring the recording of deeds would be nugatory, for he who makes a double conveyance must necessarily know it, and the very object of the Act is to guard against this fraud.” This surely means that a purchaser himself, without notice of a prior unrecorded deed from one to whom his own title is traced, may protect himself against it under the recording laws, although those through whom he claims — the mesne holders — could not have protected themselves,’ and, as against the prior deed, had no title and no estate to convey. It will not of course be questioned, that an immediate purchaser from the original vendor, if without notice of a previous conveyance by such vendor, having thereby a good title, can convey the same, secure against the possibility of successful dispute in the hands of his vendee, to another who knows all about the prior deed. But this is exactly the supposed inconsistency which is considered as resulting from the construction and application of the Act of 1843, which is affirmed by the circuit-decree and is here maintained. It is the judgment of this Court, that a purchaser at Sheriff’s sale under execution, is a purchaser from the defendant in such execution, within the meaning and protection of the rule of precedence estab - lished by this Act of 1843.
The fourth and fifth grounds of appeal make it a distine * matter of exception to the circuit decree, that the Sheriff^ when he made the levy and sale of the negro James, had no authority so to do in his hands. The ft. fa. of McCants,' lodged before the execution of the plaintiff’s mortgage,- and at that time still subsisting and unsatisfied in the office, constituted a superior li en, and the mortgagee could take *246 the estate conveyed to him by his mortgage only subject to this lien. If this lien had continued until and at the time of the seizure and sale, professedly made only under its authority and chiefly for its satisfaction, the defendant’s title would, of course, have been beyond exception, and this controversy could not have arisen. But the McOants’ fi.fa., although appearing on its face to be still opén and unsatisfied, had been, in fact, wholly paid, and thereby its lien had been finally extinguished before the levy of James. The Sheriff could, therefore, at the time of seizure and sale, derive no authority from this execution. Hunter vs. Stephenson, 1 Hill, 115 ; Thrower vs. Vaughan, 1 Rich. 18; Mouchat vs. Brown, 3 Rich. 117.
But there were in the Sheriff’s hands, at the time of levy and sale, sundry other' executions against the mortgagor, Jane J. McKnight. The Sheriff’s official acts in the levy and sale, and the deed made in pursuance thereof, will not be made void by his referring them to a power and authority which he has not, if they can be supported by any power and authority which he in fact has. To such actual power and authority the law will refer them. Gist vs. McJunkin, 1 McM. 342. The levy and sale of the negro James must therefore be regarded as made under tha-sev-eral executions of the bank, Wilson, &c., or some of them, to the satisfaction of which; in part, the purchase-money, proceeds of the sale, was in fact applied. But these executions were all lodged subsequently to the date of the plaintiff’s mortgage, and therefore constituted no lien upon this negro, the whole legal estate in which, theretofore held by the defendant in execution, Jane J. McKnight, had by the mortgage been transferred to and vested in the present plaintiff; under the general law regulating the operation and effect of chattel mortgages. And the plaintiffs in these executions were not subsequent creditors of the mortgagor, and entitled, in this character, to the benefit of the excep *247 tion to the general law created by the Act of 1843. Their debts had all been contracted before the execution of the mortgage. These executions, therefore, it is said, conferred upon the Sheriff' no power and authority to levy upon and, sell James, as he was not subject to their liens. And various authorities supposed to support this proposition are cited from our own reports. Bank vs. Gourdin, Sp. Eq. 439; Spriggs vs. Camp, 2 Sp. 181; Belune vs. Wallace, 2 Rich. 280; Pain vs. Kershaw, Harp. 275 ; Prescott vs. Smith, 1 McC. Ch. 486. Whether there is not, under our law, such a legal estate still remaining in the mortgagor of a chattel, at least until condition broken, as is the proper subject of levy and sale under execution against him, is not perhaps clearly ascertained by our cases. Certainly his own right to the continued possession and use of the chattel until that event, unless expressly denied- to him by special terms in the instrument, would be recognized and maintained even at law. It is equally sure that, by long established and universal usage among us, mortgaged chattels have been and are constantly seized and sold under execution against the mortgagor as well after as before condition broken, subject certainly, prima facie, to the lien of the mortgage. And it would seem more in accordance with the present advanced state of the law, that the estate in the mortgagor should be regarded as the legal estate, subject in his hands, and,_pnmasfacie, in the hands of all claiming under him by subsequent title, to the charge or encumbrance of the mortgage. In the present case, so far as the Court is informed, the condition of the mortgage was yet unbroken at the date of levy and sale — the note to Eady, on which the plaintiff was surety, having then yet some eighteen months to run before maturity. But let it be conceded that this proposition affirmed by the appeal is true. What then ? Is the defendant’s purchase, therefore, void as against the mortgage? It will be observed that the *248 question is not now, whether the plaintiff has any remedy, for the invasion of his rights, against the Sheriff, or against the plaintiffs in execution, who received the. proceeds of sale, to which perhaps he was entitled, and they were not. But has he a remedy against the purchaser, Gordon, to avoid or postpone his purchase ? It has been shown that purchasers at Sheriffs’ sales are in the character of purchasers within the intention, and so within the protection of this Act of 1843. But they can never need that protection except in cases where the Sheriff has no authority to sell. In all others the rights of the execution creditors sufficiently shield them against the mortgagee. Moreover, purchasers in general have no need of the protection of the statute, except when and because those from whom they buy have otherwise no lawful authority and power to sell. The mortgagor having, by the execution of the mortgage, parted with the legal estate conveyed by the mortgage, has, of course, no power of disposition over that legal estate left to him, and cannot, proprio vigore, by his conveyance of the chattel, a second time pass the same estate, or discharge the chattel from the encumbrance. But because he was the absolute owner of the chattel, and the world knew him as such, and there has been no outward change in the indicia of proprietorship, and no information of the fact of any such change has been given or made accessible to those who are liable to deal with him upon the faith and legal presumption that in this respect things continue as they were, and strangers have been deluded by these external badges of ownership into credit or purchase, those who have contributed to the delusion by their culpable design or negligence are estopped from averring to the, contrary of that of which the outward show has induced the belief, on setting up their secret conveyance of title to defeat the transactions that have proceeded upon such a belief. The same considerations which entitle a conveyance, &c., di *249 rectly from the former owner himself, to protection and support, in spite of his other want of power to convey and forbid the denial of that power, set up and -establish a conveyance from the-Sheriff upon a'sale under execution against such former owner, although the chattel was not liable to'the lien of the execution, and the Sheriff, therefore, had no authority to. sell it. He had authority to sell the property of the defendant. The defendant is not permitted to deny that the chattel thus apparently his, and to which he is found exercising some right of possession, is his, and the statute extends the prohibition and estoppel to the mortgagee, as participator in the fraud which would otherwise result. In Barnwell vs. Porteous, (et supra,) the execution under which the land was sold had been lodged, as the judgment, to be enforced by it, had been entered, after the execution of the mortgage, and the debt, which had been the cause of action therein, had been contracted before the making of the mortgage. It was expressly decided that the ft. fa. in the Sheriff’s hands against the mortgagor, conferred upon the officer no power and authority to levy upon and sell the whole absolute estate in the land. Yet the purchaser, although he was himself the creditor, was permitted, as a purchaser who had first recorded his deed, to hold against and over the mortgage.
It is the judgment of this Court that the grounds of appeal present no just exception to the circuit decree, and that this decree should therefore be affirmed. And so it is ordered.
Hunkin, Ch. J., and Waedlaw, A. J., concurred.

Decree affirmed.